[Civ. No. 1242. Third Appellate District.—September 21, 1914.]

## WILLIAM H. REYNOLDS, Appellant, v. GEORGE H. JACKSON, Respondent.

PARTNERSHIP—PURCHASE AND SALE OF LANDS—ACTION FOR ACCOUNTING.—In this action for an accounting of the dealings and transactions of an alleged partnership for the purpose of procuring options on, buying, selling, and dealing in a certain tract of land, the evidence introduced by the defendant justifies the finding that the plaintiff's assignor and the defendant did not enter into the contract of partnership described in the complaint, but that they did make an agreement concerning the sale of the land at the time a partnership is alleged to have been formed by them, which agreement the plaintiff failed to carry out, and that he was therefore not entitled to share with the defendant in the profits on the sale made by the latter.

ID.—AGREEMENT TO DIVIDE COMMISSIONS—EVIDENCE TO SUPPORT FINDING.—There is also evidence to support that part of a finding which declares that the defendant agreed that, if the assignor of the plaintiff found a purchaser of the land referred to in the complaint, the defendant would divide the net commissions received by him.

ID.—AGREEMENT TO ACCOUNT FOR PROFITS—IMMATERIAL ISSUE—ABSENCE OF FINDING.—In such action the omission to make a specific finding upon the alleged fact that the defendant agreed to account to the plaintiff's assignor for the profits realized from the sale of the land and to pay him one-half thereof, is immaterial, in view of the finding that the assignor neither sold nor procured a purchaser for the land or any part of it.

ID.—INCONSISTENCIES IN TESTIMONY—PROVINCE OF TRIAL AND APPELLATE COURTS.—Discrepancies or inconsistencies in the defendant's testimony in such action are for the trial court to consider in connection with its consideration of his entire testimony and his demeanor while testifying; and if it appears that the trial court believed and credited his testimony in the main, it is not for an appellate court to say that the discrepancies in his testimony, if in reality any there were, should be held to be of sufficient force or significance by way of impeachment to have required the court which heard and saw him testify to repudiate or disregard his testimony *in toto.*

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Fitzgerald, Abbott & Beardsley, for Appellant.

W. J. Herrin, and A. H. Hewitt, for Respondent.

HART, J.—The plaintiff, as the assignee of W. B. Reynolds, brought this action for an accounting "of all the dealings and transactions of" an alleged copartnership, "and for such other and further relief as may be just," etc.

The complaint alleges that, "on or about the fifteenth day of July, 1904, W. B. Reynolds and defendant, at the city and county of San Francisco, state of California, entered into and formed a copartnership, as equal partners, for the sole purpose of procuring options on, buying, selling and dealing in, a certain tract of land, situated in the county of Sutter, in said state; and that said W. B. Reynolds and defendant thereupon entered upon and transacted said copartnership business. That said tract of land was on or about the 1st day of October, 1904, finally sold and disposed of, resulting in a profit to said partnership, as plaintiff is informed and believes, in at least the sum of $25,000.00."

It is further alleged that the defendant, at the time of the establishment of said copartnership, promised and agreed with said W. B. Reynolds to account to and pay over to him (Reynolds) his proportional share of all moneys received on account of said partnership and its dealings in said tract of land. It is then complained that the defendant has collected and received the whole of the profits accruing to the said copartnership by reason of the sale of said tract of land, that the profits so received amount to at least the sum of twenty-five thousand dollars, and that the defendant has wrongfully and without the assent of the plaintiff appropriated the same to his own use and benefit; that neither the plaintiff nor said W. B. Reynolds has ever received or been paid any money by the defendant on account of said profits; that no settlement of said copartnership accounts has ever been made or had between the said W. B. Reynolds and the defendant or between the plaintiff and the defendant; that the plaintiff and said W. B. Reynolds have each frequently applied to and demanded of the defendant to come to a final settlement with respect to said copartnership accounts, but that the defendant has always refused and still continues to refuse to render either to the plaintiff or to the said W. B. Reynolds any account whatsoever

of the said copartnership affairs or of the copartnership money received by him; that it will appear upon a just and true settlement of the said copartnership account that a large sum of money will be due from said defendant in respect of said copartnership.

It is averred that, on the first day of December, 1904, said W. B. Reynolds sold and transferred all his interest in said copartnership, its property, money, and demands, to the plaintiff.

The answer specifically denies each and all the material averments of the complaint.

The court found that said W. B. Reynolds and the defendant did not at any time enter into or form a copartnership as equal partners or otherwise for the purposes mentioned in the complaint. The court did find, however, that the plaintiff's assignor and the defendant, on the fifteenth day of July, 1904, or thereabouts, entered into an oral agreement by the terms of which the defendant agreed that if the plaintiff's assignor would sell or find a purchaser for the tract of land referred to in the complaint, the defendant would divide with said W. B. Reynolds the net commissions to be received by him from the sale of said tract of land. But the court further found that "plaintiff's assignor did not sell said land, or any part thereof, nor did he find a purchaser for said land, or for any part thereof."

As a conclusion of law from the facts as found, the court found that the plaintiff is not entitled to anything by reason of this action, and judgment passed to the defendant accordingly.

The plaintiff appeals from said judgment and from the order denying him a new trial.

The points urged for a reversal are mainly that the findings are not supported and that the court failed to find on a material issue.

It is unnecessary to give here a detailed or even an extended epitomized statement of the testimony of the plaintiff's assignor, W. B. Reynolds, and that of other witnesses called by him. Respecting the evidence offered and received in support of the complaint, it will be sufficient to say that said Reynolds testified to the formation, in July, 1904, by oral agreement, of a copartnership between himself and the defendant, as alleged in the complaint, and that other witnesses

testified to facts and to declarations by the defendant tending strongly to corroborate the testimony of the plaintiff's assignor upon that point; that said Reynolds testified further that, upon the establishment of said copartnership, he at once proceeded to take steps to find a purchaser of the land to which the partnership agreement related, and that finally he met and talked with one E. Wineman, of San Luis Obispo (who was looking for an investment in land), relative to the land for the sale of which said alleged copartnership was formed, and that Wineman eventually and within a short time after said conversation purchased said land; that the defendant afterwards admitted to said Reynolds that he made a profit of nine thousand dollars on the transaction, but denied that Reynolds was entitled to any part thereof.

The defendant testified, however, that he never at any time had any transaction involving the subject matter of this action with W. B. Reynolds. "He (referring to said Reynolds) asked me if I had some land suitable for dredging and reclaiming," testified the defendant. "This was long before the sale was made. I had no transactions with Mr. Reynolds regarding the sale of land in Sutter County. I didn't have any transactions with the man at all. I had a conversation with him. I don't remember now just what time. He came to me on the street in front of the Lick House, some time along in the summer. That conversation did not relate to the land that Mr. Wineman purchased, only a small portion of it—to the portion of land that belonged to Antone Borel and Mr. Nutal. There were four thousand seven hundred acres in that tract. It was situated in Sutter County about three or four miles out from Marcuse. That is part of the land that I sold to Mr. and Mrs. Wineman and referred to in the depositions of Mr. and Mrs. Wineman just read. Regarding this land, Mr. Reynolds told me that he had a man who had two dredgers, and he was looking for a piece of land to buy, and he wanted the land where he could reclaim it, and wanted to know if I had land suitable for that business, and I mentioned this particular piece of land and told him that it might make a fairly good reclamation—this portion. I made an agreement with him regarding the sale of the land. The agreement was not in writing. After talking to me about the land, he spoke about this man and he said—he wanted to know the price and I told him that if this man would sell this

land for ten dollars, we would divide two dollars and a half an acre on the land. He would take $1.25 and I would take $1.25 if it was sold at ten dollars. That is all the agreement I had with him. I never had any other agreement with him concerning any other land in Sutter County. That is the only piece of land that I had an agreement with him concerning the sale of. He never sold the land. He never came to me with the name of a purchaser. He told me several times on the street that somebody was going to come. I had not had the land for sale so very long; a few months. I had the land staked out—knew that I could get it any time I wanted it, but I told Mr. Borel that whenever I found a purchaser, I would call on him for an option for this land; but I never got the option until away along in the latter part—I don't know—but it was the first of August, somewhere along there. The option was in writing. Mr. Borel signed it, but I did my business with his private secretary." The defendant further testified that he thought that he introduced W. B. Reynolds to Wineman, the purchaser of the Sutter County lands. After Wineman had decided to buy the land through the defendant, the latter met Reynolds at the Lick House. Reynolds asked the defendant if he had sold Wineman "a lot of land" in Sutter County, and, upon an affirmative reply by the defendant, insisted that he (said Reynolds) having first brought Wineman's attention to said land and thus put him in the way of making the purchase, was entitled to his share of the profits from the sale. The defendant replied to Reynolds: "I am not going to give you a red cent—not a cent." The defendant contradicted the testimony of certain witnesses called for the plaintiff to the effect that the defendant had said to them, prior to the sale of the land to Wineman, that W. B. Reynolds was an equal partner with him in the option on and sale of said land and the profits accruing from said sale. The defendant further testified that he was under an agreement with Umbsen & Co., with whom he was connected insofar as the handling of country real estate was concerned, whereby he was to pay said firm one-third of the profits on all sales of such lands made by him.

Wineman testified that his attention was first called to the land purchased by him by an advertisement that he observed in one of the San Francisco daily newspapers; that he and his wife thereafter went to San Francisco and called at the office

of Umbsen & Co., where the advertisement directed them to go to inquire about the land; that there they met the defendant, who, the following morning, started with Wineman and wife to Sutter County to inspect the land; that, after viewing it, he concluded to buy the property, and, returning to San Francisco, there closed the deal. He said that he had no recollection of ever meeting with Reynolds until after the sale of the land to him had been completed, and this meeting took place at the Lick House, in San Francisco. Subsequently he again met Reynolds, who said to him that he (Wineman), in buying the land from the defendant, had "bought no land—you bought an ocean," and that Reynolds further said to him "if we could back out on that bargain we made with Mr. Jackson, he could save us ten thousand dollars, sell us the land cheaper, ten thousand dollars cheaper. . . . Mr. Reynolds did not at any time ever mention this land to me before I went up to Sutter County to see it with Jackson."

Thus there has been given a sufficient statement of the evidence introduced by the defendant to show that there was, so far as this court can determine, sufficient justification for the finding that the plaintiff's assignor and the defendant did not enter into the contract of copartnership described in the complaint, but that they did make an agreement concerning the sale of said land at the time the alleged copartnership is alleged to have been formed and entered into by and between them, but that the plaintiff failed to carry out his part of said agreement and was, therefore, not entitled to share with the defendant in the profits on the sale made by the latter.

It may be true, as counsel for the plaintiff undertake to point out, that the defendant's testimony is characterized by certain discrepancies or inconsistencies, but these were matters for the trial court to consider in connection with its consideration of the defendant's entire testimony and his demeanor while testifying. If, as appears to be true, the trial court believed and credited his testimony in the main, then it is not for this court to say that the discrepancies in his testimony, if in reality any there were, should be held to be of sufficient force or significance by way of impeachment to have required the court which heard and saw him testify to repudiate or disregard his testimony *in toto*. The proposition that an appellate court will not disturb findings based upon evidence wherein there is a substantial conflict has been so often stated

and applied that its reputation would seem to be supererogatory. In this case, there being nothing inherently improbable in the testimony of the defendant, notwithstanding the asserted inconsistencies or contradictions pointed out therein, such a conflict does exist, and when we are asked to set aside findings which have been predicated upon testimony which may involve certain inconsistencies or contradictions, which in themselves do not necessarily render such testimony so intrinsically improbable as to justify us in declaring that it is, upon its face, wholly unbelievable, we are called upon to perform a duty which, in the very nature of things, a reviewing court cannot well be expected satisfactorily to discharge, viz: weighing and so determining the credit to be accorded testimony given *viva voce* before another tribunal. Even if it be true that the defendant became tangled or confused to some extent in his attempted explanations of the price he was to pay for certain lands, of the lands included in those constituting the tract sold to Wineman, and of the amount he was to pay Reynolds in case the latter himself sold or found a purchaser of the Borel tract, the fact remains that he unequivocally declared that there was no arrangement entered into between him and Reynolds except the one found by the court to have been made, and it was within the legal province of the court to believe that statement as against the confusion into which he may seem to have been led as to the details referred to as well as against the counterstatements of W. B. Reynolds and other witnesses for the plaintiff.

It is next contended that there is no evidence to support that part of finding 2 which declares that the defendant agreed that, if the assignor of plaintiff found a purchaser of the land referred to in the complaint, he (defendant) would divide the "net commissions received by him." We think there is enough evidence in the record to have authorized the court to make that part of the finding. The defendant testified (p. 120, trans.) that he was told by Borel's secretary that the Borel tract could be bought for six dollars per acre, and that he then figured on selling it at ten dollars per acre; that he proposed to Reynolds that if he secured a purchaser for the land at the last mentioned figure, they would thereby make a profit of $2.50 per acre, or $1.25 each per acre. He said that, while he would at the figures men-

tioned receive for the land four dollars per acre in excess of the sum paid for it, he would, however, be required to pay one-third of said excess to Umbsen & Co., and, besides, pay other necessary expenses incurred in negotiating the sale, such as the expense of an abstract and that of taking the parties to the land, etc. He testified (p. 134, trans.) that he figured that the sum he would be required to pay Umbsen & Co., and the expenses attending the consummation of the transaction would total about $7.50, and thus there would be left, to be divided between himself and Reynolds, in case the latter sold or procured a purchaser for the tract, the sum of $2.50. There can hardly be any reason to say that the court was not justified in finding from this testimony that the agreement of the defendant was that he "would divide with plaintiff's assignor the net commissions (or profits) to be received by him from the sale," in the event that Reynolds procured a purchaser. Counsel, however, attempt to establish a distinction between the term "commissions" and the term "profits," and declare that the finding is not sustained because the testimony shows that the division between Reynolds and the defendant was to be of the "profits" and not of "net commissions," as the finding states. But, while the two terms are not, in a commercial sense, strictly convertible, the one being more applicable to sales of merchandise and the other to sales of real estate, still in effect they mean one and the same thing in this case. What is unquestionably meant by both the finding and the testimony is that what remained out of the money received on the sale, over and above the cost of the land, and after expenses in negotiating it were deducted, should be equally divided between the parties, if Reynolds was the procuring cause of the sale.

The last point made by the plaintiff is that the court failed to find on a material issue raised by the pleadings. This point arises from the omission by the court to make a specific finding upon the alleged fact that the defendant agreed to account to Reynolds for the profits realized from the sale of the land and to pay him one-half thereof.

But the obvious reply to that proposition is to be found in findings Nos. 2 and 3, the first of which necessarily implies that the defendant agreed to render to W. B. Reynolds an account of the profits on the sale of the land and to pay him his proportionate share thereof, while finding 3 rendered a

finding on said issue wholly unnecessary. To be more explicit: While the court found that the copartnership as alleged in the complaint was not formed by and between the parties, it did find (finding 2) that, on the day upon which the alleged copartnership was established, the parties did enter into a convention of the nature of a broker's rather than of a partnership agreement, by the terms of which they were to share equally in the profits realized from the sale of the land referred to in the complaint, provided the plaintiff's assignor either sold or procured a purchaser of said land. Of course, the latter finding, as stated, of necessity implies a finding that the defendant agreed to account to W. B. Reynolds for the profits from the sale and to pay him his share thereof according to the terms of the agreement, if said Reynolds carried out his part of said agreement. In other words, such an agreement necessarily carried with it an agreement on the part of the defendant, without an express stipulation to that effect, to account to Reynolds for and pay to him his share of the profits, if he (Reynolds) executed his part of the contract, and therefore, a finding that such an agreement was made necessarily carries with it a finding that the agreement by the defendant to account to Reynolds for the profits, etc., was made. But the court further found (finding 3) that Reynolds neither sold nor procured a purchaser of said land or of any part thereof, hence, since, under that finding, no duty rested on the defendant to account to Reynolds for the profits, etc., it became entirely unnecessary for the court to make a specific finding upon that issue, for, in view of the finding last referred to, a finding upon said issue would merely have amounted to a declaration that the defendant agreed to account to Reynolds for profits arising from a transaction in which he had no interest.

We perceive no importance, in its bearing upon the point last considered, in the discussion in the briefs of the question whether, as the plaintiff contends, a finding by the court, upon sufficient evidence, that an agreement other than a partnership agreement had been entered into between the parties whereby they were to receive an equal share of the profits obtained from the sale of the land referred to in the complaint, would come within the fair and reasonable import or intendments of the averments of a partnership agreement contained in the complaint and the issues made. (See

*Gorham* v. *Heiman,* 90 Cal. 346, 358, [27 Pac. 289]; *Mc-Arthur* v. *Blaisdell,* 159 Cal. 604, [115 Pac. 52]; *Bedolla* v. *Williams,* 15 Cal. App. 738, [115 Pac. 747].) But, conceding the proposition to be important here, the reply to it is that, as shown, the court did find that an agreement of a different character from the one pleaded was entered into between the parties for the purpose of selling the land mentioned in the complaint and of dividing equally between them the profits arising from the sale of said land.

We think the record is free from error and, therefore, the judgment and the order denying the plaintiff a new trial should be affirmed. It is so ordered.

Chipman, P. J., and Burnett, J., concurred.