[Civ. No. 1826.   First Appellate District.—August 15, 1916.]

GEORGE SELLERS, Appellant, v. SOLWAY LAND COM-
PANY (a Corporation), et al., Defendants; BALFOUR,
GUTHRIE & CO. (a Copartnership), et al., Respond-
ents.

REAL ESTATE BROKERS — ORAL AGREEMENT TO SHARE COMMISSIONS —
STATUTE OF FRAUDS — SECTION 1624, SUBDIVISION 6, CIVIL CODE. —
The provision of subdivision 6 of section 1624 of the Civil Code
was only designed to protect owners of real estate against unfounded
claims of brokers, and does not extend to agreements between
brokers to co-operate in making sales for a share of the commissions.

ID. — CONTRACT BETWEEN REAL ESTATE BROKERS — AGREEMENT TO PAY
SPECIFIC COMPENSATION—AUTHORITY TO EXECUTE CONTRACT—WRIT-
ING ESSENTIAL.—A contract made by the manager of the land and
loan department of a real estate partnership agreeing to pay a
second broker a specific amount of money for the procuring of a
purchaser for land for the sale of which the copartnership were the
agents, is void, where the authority of the person signing the con-
tract on behalf of the partnership is not in writing.

ID.—ACTION ON CONTRACT — PLEA OF STATUTE OF FRAUDS — KNOWLEDGE
OF RENDITION OF SERVICES—LACK OF ESTOPPEL.—In an action to
recover upon such a contract the copartnership is not estopped from
setting up the statute of frauds, by reason of the fact that it know-
ingly held the signer of the contract out to the world as having the
authority he assumed, and of its knowledge that such employee was
dealing with the plaintiff, and had performed services under the

invalid contract, where it also appears that the sale was made without knowledge that the plaintiff was interested other than by a verbal notification made some time previously that he was endeavoring to sell the land to the purchasers.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. A. E. Graupner, Judge.

The facts are stated in the opinion of the court.

J. E. Rodgers, A. F. Bray, and Sterling Carr, for Appellant.

McCutchen, Olney & Willard, and J. M. Mannon, Jr., for Respondents.

LENNON, P. J.—In this action the plaintiff sued the defendants for the sum of $6,250, alleged to be due as a commission upon the sale of a large ranch in Contra Costa County, the complaint alleging that said sale was made through the efforts of the plaintiff under the contract hereafter set out. The land was the property of the defendant Solway Land Company, and was being managed and handled by the defendants Balfour, Guthrie & Co., a copartnership, consisting of a number of individuals, some of whom are named as defendants, and upon the sale referred to the copartnership received a commission of two and one half per cent upon its sale price of one hundred and thirty thousand dollars, to wit, the sum of $3,250, as compensation for the care of the ranch during a certain period and for its sale. The agency of the defendants, Balfour, Guthrie & Co., was, however, unknown to the plaintiff, and the complaint charges them as owners. At the conclusion of the evidence a motion of defendant Solway Land Company to dismiss as to it was granted, and no question is raised as to the correctness of the court's action in this regard. Hereafter in this opinion the term "defendants" will refer only to Balfour, Guthrie & Co.

The negotiations between the plaintiff and the defendants for his contract were conducted by him with one R. F. McLeod, an employee of the defendants and the manager of a department of their business known as the land and loan

department. The contract was signed by McLeod on behalf of the defendants and is in the following terms:

"San Francisco, 22nd Sept., 1909.

"Mr. Geo. Sellers,

"Oakley, Cal.

"Dear Sir:

"Replying to your letter of 21st inst., the price we are asking for the Solway ranch is $125,000, including stock and implements and interest in the pumping plant. We would be willing to accept one-half cash and carry the balance at 6% net for a reasonable time. We will pay 5% commission on the above price to the party effecting a sale.

"You are no doubt aware that part of the ranch is rented to Japanese for potatoes, etc., and possession of same cannot be given until expiry of the lease this fall.

"Yours truly,

"Balfour, Guthrie & Co.

"Per (Signed) R. F. McLeod.

"P. S.—There is about 1700 acres altogether."

(It may be said parenthetically that at the time of the sale the price of the property had been increased.)

It is an established fact in the case, and not disputed, that the authority from the defendants to McLeod to enter into this contract was not conferred in writing. The action having been dismissed as to the defendant Solway Land Company, the remaining defendants at the conclusion of the trial moved that the jury be directed to return a verdict in their favor, upon the ground of the lack of written authority to McLeod, section 2309 of the Civil Code requiring that an authorization to an agent to enter into a contract required to be in writing must itself be evidenced by a written instrument. This motion was also granted, and the jury thereupon returned its verdict in favor of the defendants. From the judgment entered thereon the plaintiff takes this appeal.

In support of his appeal plaintiff urges that the court erred in directing the jury to find in defendants' favor for two principal reasons, viz., first, that the plaintiff's contract being one between broker and broker, is not governed by section 1624, subdivision 6, of the Civil Code, and that therefore McLeod's authority to enter into it was not required to be in writing; and, second, even if the contract sued upon

be one that is governed by said section, the conduct of the defendants in reference thereto estops them from availing themselves of the bar of the statute.

The authorities in this state holding that an oral contract between brokers whereby one employs or secures the co-operation of another to sell real estate is valid and enforceable, may be roughly divided into three classes. The first class comprises cases where the brokers' agreement was purely and simply one of partnership, such as *Coward* v. *Clanton,* 79 Cal. 23, [21 Pac. 359], *Gorham* v. *Heiman,* 90 Cal. 346, [27 Pac. 289], *Bates* v. *Babcock,* 95 Cal. 479, [29 Am. St. Rep. 133, 16 L. R. A. 745, 30 Pac. 605], and *Baker* v. *Thompson,* 14 Cal. App. 175, [111 Pac. 373]; the second comprises cases where the agreement of the brokers was to divide between them, either equally or in a stated proportion, a commission or compensation to be received by one of them from the owner of the land to be sold, such as *Casey* v. *Richards,* 10 Cal. App. 57, [101 Pac. 36], *Hageman* v. *O'Brien,* 24 Cal. App. 270, [141 Pac. 33]·, *Reynolds* v. *Jackson,* 25 Cal. App. 490, [144 Pac. 305], *Hellings* v. *Wright,* 29 Cal. App. 649, [156 Pac. 365], *Jenkins* v. *Locke-Paddon Co.,* 30 Cal. App. 52, [157 Pac. 537]; and the third class consists of cases, two in number, in which one broker, having a contract from the owner to sell real property, has agreed with a second broker to pay him for his services either in procuring a buyer for the property or assisting in that end—those cases being *Saunders* v. *Yoakum,* 12 Cal. App. 543, [107 Pac. 1007], and *Johnston* v. *Porter,* 21 Cal. App. 97, [131 Pac. 69].

In the case at bar the contract, as we have seen, is one to pay a specific amount, viz., five per cent on the purchase price, for the procuring of a purchaser, and would fall within the last-named classification and be governed by the authority of those cases, unless it contains elements differentiating it from them and making inapplicable the rule therein followed.

The leading case in this state upon the question is *Gorham* v. *Heiman,* 90 Cal. 358, [27 Pac. 289], and which has been cited in practically every decision upon the subject which has since been rendered. The agreement there was between brokers to co-operate in the selling of a mine and to divide commissions, and the court referring thereto used this lan-

guage: "Counsel seem to rely on section 1624 of the Civil Code, subdivision 6. But clearly that provision was only designed to protect owners of real estate against unfounded claims of brokers. It does not extend to agreements between brokers to co-operate in making sales for a share of the commissions." It will be seen upon examination that all the cases in the first and second classification made above dealt with agreements between brokers to co-operate in the common object of procuring a purchaser for real property, and come squarely within the authority of *Gorham* v. *Heiman.*

With regard to the remaining two cases, it appears that in *Saunders* v. *Yoakum, supra,* "defendant agreed with plaintiff that if he would procure a purchaser for any or all of the property, he would pay to the plaintiff a commission in the event of a sale." Plaintiff performed his agreement, and the defendant received a commission of one thousand two hundred dollars, and refused to pay plaintiff for his services. The latter thereupon brought suit, and recovered four hundred dollars as the value thereof. Upon appeal the contention of the defendant that the contract was void because not in writing was overruled upon the authority of the leading case above cited, the court construing the agreement to be one between brokers to co-operate in making a sale for a share of the commission, and referring to the services of the plaintiff as being rendered "in assisting the defendant to earn his commission."

In the second case—*Johnston* v. *Porter et al.*—it appears that Johnston, the plaintiff, introduced the purchaser of the property to the defendant Morey, who was acting as the agent of the owner, and also assisted in conducting the negotiations which resulted in a sale. Morey orally agreed to compensate Johnston for his services. Upon the conclusion of the sale Morey received a commission of $2,250, out of which he offered to pay Johnston $250. Johnston being dissatisfied with the amount tendered by Morey, brought suit upon the oral agreement for the reasonable value of his services. The court allowed a recovery of one thousand five hundred dollars out of $2,250 received by Morey. Upon appeal the judgment was sustained, this court construing the agreement between Morey and Johnston as being one between two brokers to co-operate in the sale of real estate, using this language: "Subdivision 6 of section 1624 of the

Civil Code, which declares an agreement authorizing or employing an agent or broker to sell real estate for a compensation or commission to be invalid unless reduced to writing, was designed only for the protection of real estate owners against the unfounded claims of brokers; and it was never intended to be applied to contracts between brokers co-operating in the sale of real property and agreeing to share commissions earned as the result of such sale," citing *Gorham* v. *Heiman, supra.*

If it be the law in this state, as stated in *Gorham* v. *Heiman*, that the section of the code under consideration "was only designed to protect owners of real estate against unfounded claims of brokers," then the authorization to the employee of the defendants McLeod did not need to be in writing. But, as was said in the later case of *Aldis* v. *Schleicher*, 9 Cal. App. 372, [99 Pac. 526], that section is "equally applicable to any contract whereby one, whether owner or not, employs another to effect a sale of real estate, and agrees unconditionally to pay a stipulated sum for the performance of such services."

It will be observed that in *Gorham* v. *Heiman*, in which the rule was first laid down that the provisions of subdivision 6 of section 1624 of the Civil Code apply only to contracts between the owners of real estate and brokers, the contract there being considered was literally an agreement between brokers, dealing with each other as such, to unite their efforts in the disposal of a mine, and to divide the compensation to be earned in the event of success, and that there was no employment by one of the other. Evidently such a contract was one of partnership, and did not come within the terms of the section, whether the legislative intent in enacting it was merely to protect owners of real estate or its scope was much broader. As already pointed out, the cases following *Gorham* v. *Heiman*, with the exception of the two noted, all dealt with agreements between brokers to divide commissions to be received as the result of their joint efforts; and even in those two, while the agreement as to the compensation of the complaining broker was more in the nature of a direct promise by the other to compensate him for services already or thereafter to be rendered, it is still apparent that they dealt with each other as agents, that they were both interested in the result of their

common efforts, and that the compensation agreed to be paid, or allowed by the court, was a part only of the compensation of the employing broker, thus preserving in some degree the idea of co-operation between broker and broker for a division of the fee, and enabling the court in its desire to prevent the defeat of an equitable claim to construe the agreement as one for the division between brokers of a compensation jointly earned.

In the case at bar there is no such partnership between the brokers, nor any agreement to divide compensation, and no effort on the part of the plaintiff to obtain a division of the commission received by the defendants. On the contrary, the amount sued for is almost double the sum which the employing brokers received as their compensation for the care of the property and its sale. There was, moreover, no knowledge on the part of the broker employed that his employers were in fact agents, and the contract is one of employment for a specific compensation. In the complaint the employing brokers are charged as the owners of the property; and it was only during the progress of the trial that the plaintiff discovered that they were not such owners, and when such discovery was made there was no amendment of the complaint requested. If we hold this case not to come within the provisions of section 1624 of the Civil Code, we must ignore the careful insistence to be discerned in the cases upon the existence of a partnership, or of an agreement to divide commissions, or of the existence of a fund received by one broker in which the second broker may be allotted a share—and lay down the rule that all these things are immaterial, and that a direct contract of employment to sell real estate for a specific compensation is invalid if made by the owner of the property with a broker, but is valid if made between two brokers—contrary to the rule declared in *Aldis* v. *Schleicher*, 9 Cal. App. 372, [99 Pac. 526], and which appears to us to be plainly applicable to the case at bar.

We are, therefore, constrained to hold that the plaintiff neither by the allegations of his complaint nor his proof upon the trial brought his case within the authority of those holding that a contract between brokers to co-operate in the sale of real estate for a division of the compensation to be thereby earned is valid and enforceable although not in writing. The

first contention of the appellant must accordingly be disallowed.

The second contention of the appellant is that even if the contract sued upon be one that is required to be in writing, the conduct of the defendants in reference thereto estops them from availing themselves of the bar of the statute for three reasons, viz., first, because the defendants knowingly held McLeod out to the world as having the authority he assumed; second, because the defendants knew that McLeod was dealing with the plaintiff; and, third, because the defendants accepted the benefits of McLeod's acts.

The principle of estoppel is one of equity; and whether in a given case the facts and circumstances shown are sufficient to create it is a question for the court.

It is also well settled that estoppels are not favored, their effect being to prevent the truth being shown.

The facts on which the plaintiff's plea of estoppel is based are, briefly, that McLeod was the manager of the department of the defendants' business known as the land and loan department; that as such manager he answered all correspondence addressed to the defendants on matters relating to that department; that he had authority, though not in writing, to consult and deal with agents in regard to a sale of the defendants' land; that a contract similar to the one given to the plaintiff was subsequently entered into by him on behalf of the defendants with a person other than the plaintiff; that the efforts of the plaintiff to sell the ranch were known to McLeod and to the foreman and superintendent of the ranch, which the plaintiff visited a number of times in the company of prospective buyers; that plaintiff expended money in advertising the ranch in his endeavor to procure a purchaser, and, finally, that the persons to whom the ranch was sold were first interested in its purchase by the plaintiff, who sent them to McLeod for the purpose of arranging terms and closing up the transaction, but without advising McLeod that he had done so.

It further appears, however, that the negotiations were conducted by the purchasers with McLeod, and that nothing was said by them concerning the plaintiff's participation in the matter, and that the sale was made to them without knowledge on the part of McLeod that the plaintiff was interested

in it other than a verbal notification made some time previously that he was endeavoring to sell the land to these people.

We are of the opinion that the court correctly held that the above facts were insufficient to constitute an estoppel as against the plea of the statute of frauds.

It has long been held in this state that an agent having sold real property under a contract of employment invalid because not in writing can recover neither upon the contract nor upon *quantum meruit.* (*McCarthy* v. *Loupe,* 62 Cal. 299; *Myres* v. *Surrhyne,* 67 Cal. 657, [8 Pac. 523]; *Zeimer* v. *Antisell,* 75 Cal. 509, [17 Pac. 642]; *McPhail* v. *Buell,* 87 Cal. 115, [25 Pac. 266]; *Shanklin* v. *Hall,* 100 Cal. 26, [34 Pac. 636]; *Mc-Geary* v. *Satchwell,* 129 Cal. 389, [62 Pac. 58]; *Jamison* v. *Hyde,* 141 Cal. 109 [74 Pac. 695].) Although in these cases no question of estoppel is considered, they offer a strong analogy to the case at bar, for all the facts present here and claimed by the plaintiff to constitute an estoppel were necessarily present in those cases, viz., an invalid employment, knowledge of its invalidity, knowledge of rendition of services under the contract, and acceptance of the benefits arising from the performance of the contract by the agent. The statute of frauds, however, was held to bar the agent's recovery.

In the case of *McRae* v. *Ross,* 170 Cal. 74, [148 Pac. 215], the question of estoppel under circumstances somewhat similar to those in the case at bar was considered. In that case a ranch in Solano County had been sold. A. T. Ross and three other respondents (sisters and brother of A. T. Ross) were owners. McRae claimed to have found the purchaser, and relied upon a broker's note from A. T. Ross alone. There was no written authority from the other respondents to A. T. Ross, but McRae claimed that they had held him out as their agent and that they were estopped from raising the defense of the statute of frauds, particularly Civil Code, section 2309. This alleged holding out (one of the elements claimed in the estoppel in the case at bar) consisted of statements claimed to have been made to McRae by the respondents to the effect that A. T. Ross was authorized to act for them, and that he was in charge of the ranch. It was held that there was no estoppel, the court saying (Mr. Justice Sloss writing the opinion): "It is clear that the findings in favor of the defendants Raymond H. Ross, Mabel I. Ross and Mrs. Henry

are in accord with the undisputed evidence. A contract for the sale of real estate, or for the employment of a broker to sell real estate, must be in writing. (Civ. Code, sec. 1624; Code Civ. Proc., sec. 1973.) None of these three defendants ever made any written contract with plaintiff, or even had any written communication with him. Plaintiff attempted to show that each of them had referred him to a brother, their codefendant, Albert T. Ross, as the person in charge of the ranch. But the testimony was that Albert did not have any written authority to bind them, and this was necessary to empower him to make a contract on their behalf to sell real estate or employ an agent to sell it. (Civ. Code, sec. 2309.) Even if the making of the oral statements had been shown without contradiction—which is not the case—such statements would not have bound these defendants. There is no ground for the contention that the alleged declarations raised an estoppel against the three defendants. To so hold would be to destroy the statutory requirement that authority to sell real estate must be in writing.''

The appellant strongly relies on the case of *Seymour* v. *Oelrichs,* 156 Cal. 782, [134 Am. St. Rep. 154, 106 Pac. 88]. In that case the plaintiff Seymour sued for damages for breach of a contract of employment, his employment to cover a period of ten years. The contract was not in writing, and, therefore, void under the statute of frauds. The claim of estoppel was based upon the ground that the defendants when negotiating for his employment promised him a written contract, and had induced him, in order to permit him to accept the employment, to resign a life position carrying a good salary with a right to a pension upon retirement. Through circum. stances arising subsequent to his entering upon his employment the written contract was not given to Seymour, and, after rendering services under the verbal contract for a period of three years, he was dismissed. In holding the defendants estopped to set up the statute of frauds the supreme court laid emphasis upon the fact that it was not because of the rendition of services under the contract that the estoppel was allowed, but because of the change of position suffered by the plaintiff through having resigned a lucrative position— and which he could not now regain—in order to accept the employment. It was held that it would be a fraud upon the plaintiff if the defendants, after having induced him to resign

from his position upon the promise of a ten year written contract, and having failed to reduce the contract to writing, were permitted to set up the invalidity of the oral contract to defeat recovery. The court emphasized the fact that the plaintiff was not helped by the performance of services. On this subject it says: "Under this claim the fact of part performance by plaintiff plays no part whatever. . . . Plaintiff's case in this regard would be just as strong if after his resignation he had been prevented by defendants from beginning to perform."

Thus far we have considered the question of estoppel only so far as it is affected by the evidence offered by the plaintiff; but since plaintiff's claim is based upon the alleged holding out by the defendants of their employee McLeod as having authority to enter into the contract; upon their knowledge of the plaintiff's activity in the performance of the contract, and upon their accepting the benefit of the results of his labors, we think it plain that the court, in considering whether the estoppel claimed had been established, was bound to consider all of the evidence offered upon those matters, whether by the plaintiff or the defendants. In that view of the case the plaintiff's position becomes still more untenable, for the defendants offered evidence tending to show that the plaintiff's contract has expired long before the sale took place, that he had been warned to desist from his efforts to sell the ranch, and that the plaintiff recognized by his acts that his contract was no longer in effect; and that even if the sale of the property was made to persons who were first interested in it by the plaintiff, the latter was guilty of gross negligence in failing to report to the defendants that he had brought the property to the attention of its ultimate buyers, thus allowing the defendants to deal with them in ignorance of their liability to pay to the plaintiff a commission. These facts would have a strong bearing upon the question of whether the defendants received any benefit from the contract made by this agent, and consequently upon the potency of the plaintiff's appeal to the equitable jurisdiction of the court for the application of the principle of estoppel in his favor.

There is no merit in the final point urged by the appellant that the court having at the conclusion of the plaintiff's case denied defendants' motion for a nonsuit, the invalidity of the contract and the facts adduced by the plaintiff in support of

his plea of estoppel at that time appearing, it was error to subsequently grant the motion of the defendants to direct the jury to return a verdict in their favor.

For the foregoing reason the judgment is affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 14, 1916, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 12, 1916.