[Civ. No. 3202.  Second Appellate District, Division Two.—June 18, 1920.]

## ANNETTE EATON, Respondent, v. SAMUEL E. YOUNT, Appellant.

[1] BROKER'S COMMISSIONS — ORAL CONTRACT OF EMPLOYMENT — RE-COVERY BARRED.—Under subdivision 6 of section 1624 of the Civil Code, a broker cannot recover compensation for securing a purchaser for the real property of a mining corporation where his only contract with the corporation was an oral contract of employment entered into with a stockholder of the corporation.

[2] ID.—BROKER DEFINED.—A person whose business is to bring buyer and seller together is a "broker," within the meaning of subdivision 6 of section 1624 of the Civil Code, though he act as such in but a single transaction.

[3] ID.—EMPLOYMENT BY OTHER THAN OWNER—STATUTE OF FRAUDS—APPLICATION OF.—The provision of subdivision 6 of section 1624 of the Civil Code that "an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission" is "invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be

———

1. Power of legislature to prohibit offering another's real estate for sale without written authority, notes, Ann. Cas. 1913C, 727; 12 L. R. A. (N. S.) 707.

Necessity that agent's authority to purchase or sell real estate be in writing to enable him to recover compensation for his services, notes, 13 Ann. Cas. 977; Ann. Cas. 1915A, 1133; 44 L. R. A. 601; 9 L. R. A. (N. S.) 933.

charged, or by his agent," is applicable to any contract whereby one, whether owner or not, employs another to effect a sale of real estate and agrees unconditionally to pay a stipulated sum for the performance of such services.

[4] ID.—SALE OF CORPORATE REAL PROPERTY — ORAL AGREEMENT OF STOCKHOLDER TO PAY COMMISSION—SHARING OF ADVANTAGE—PERSONAL LIABILITY.—Where there is no evidence that the real property of the corporation contracted to be sold was not worth the agreed selling price, a stockholder owning a large part of the stock of the corporation cannot be held personally liable for broker's commission on an oral agreement he made with the broker for securing a purchaser for the property, on the theory that the agreement between him and the broker was to share an advantage, notwithstanding the purchaser subsequently forfeited all his first payment to the corporation to the stockholder's advantage.

[5] ID.—AGREEMENT TO PAY DEFINITE SUM AS COMMISSION—SHARING OF ADVANTAGE—CONSTRUCTION OF CONTRACT.—An oral agreement by a stockholder to pay a definite sum to a broker, as compensation or commission for securing a purchaser for the real property of the corporation, is not an agreement to share any advantage that, as a result of an advantageous sale, might indirectly accrue to the former as a stockholder in the corporation.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Reversed.

The facts are stated in the opinion of the court.

F. R. McNamee and Leo A. McNamee for Appellant.

Lewis Cruickshank and Vincent B. Vaughan for Respondent.

FINLAYSON, P. J.—This is an action to recover upon an oral contract for services in the sale of real estate—certain mining properties owned by the Boss Gold Mining Company, a corporation. Plaintiff recovered judgment for five thousand dollars, and defendant appeals.

Defendant, who was president of the Boss Gold Mining Company, the owner of the property, held and owned a little less than three-eighths of all the stock issued by that corporation. According to the findings of the trial court, defendant entered into an agreement with plaintiff whereby it was agreed that if plaintiff would procure a person or persons to enter into a contract with the Boss Gold

Mining Company to purchase its real property for the sum of one hundred and fifty thousand dollars, and such person or persons would make a first payment of fifty thousand dollars on account of the purchase price, defendant would pay plaintiff, in consideration of her services, ten per cent of such purchase price, her services to be paid for as and when payments should be made by such person or persons. The lower court further found that, under and pursuant to the terms of the agreement between plaintiff and defendant, the former did procure a person or persons who entered into a contract with the Boss Gold Mining Company for the purchase of its real property at the price and on the terms aforementioned; that said person or persons paid the Boss Gold Mining Company the sum of fifty thousand dollars as first payment on account of the agreed purchase price; and that thereupon, and under and by virtue of the terms of the agreement between plaintiff and defendant, there became due plaintiff from defendant a sum equal to ten per cent of such first payment, namely, five thousand dollars.

Defendant, in his answer, denied that he ever made any contract with plaintiff to procure a purchaser for the property of his corporation. The only contract with defendant that plaintiff sought to prove at the trial was an oral contract of employment. Defendant objected to the evidence on the ground that the sixth subdivision of section 1624 of the Civil Code requires such contract, or some note or memorandum thereof, to be in writing and subscribed by the party to be charged, or by his agent. The court, subject to defendant's objection, received evidence of the oral contract, and gave judgment for plaintiff, as already stated.

[1] It is clear to our minds that respondent was not entitled to recover on the oral contract of employment. Section 1624 of the Civil Code provides in express terms that "an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission" is "invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent." The oral agreement testified to by plaintiff and her witnesses was clearly within the terms of this code section. The agreement, if its

terms were as testified to by plaintiff and her witnesses, was "an agreement . . . employing" plaintiff "as agent or broker to . . . sell real estate for compensation or a commission." **[2]** Within the meaning of this code provision, a person whose business it is to bring buyer and seller together is a "broker" though he act as such in but the single transaction. (*Stout* v. *Humphrey,* 69 N. J. L. 436, [55 Atl. 281].) "The duty assumed by a broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made." (*Shanklin* v. *Hall,* 100 Cal. 29, [34 Pac. 637].) And that is precisely what plaintiff was employed to do, and precisely what she asserted she did do. Under the terms of the agreement, as testified to by plaintiff and her witnesses, "the party to be charged" was the defendant here, a stockholder in and president of the corporation that was selling the property. Defendant had no authority from the owner, written or oral, to sell the property.

The theory advanced by respondent to sustain her asserted right to a recovery on defendant's oral agreement employing her to sell real estate owned by the Boss Gold Mining Company is that section 1624 is designed for the protection of "owners" only, and that, moreover, because defendant owned stock in the corporation he necessarily benefited by the sale and by plaintiff's services, and, therefore, plaintiff is entitled to recover under the rule enunciated in a line of cases wherein it is held, in substance, that an oral agreement by one person to share with another his advantage on a sale of real estate is a valid agreement. We can find no merit whatever in this argument.

To support her claim that she can recover for her services under the oral agreement because the property was owned, not by appellant, but by the Boss Gold Mining Company, respondent seizes upon that portion of the opinion in *Gorham* v. *Heiman,* 90 Cal. 358, [27 Pac. 289], where it is said that subdivision 6 of section 1624 was "designed to protect owners of real estate against unfounded claims of brokers." This language of the opinion in the Gorham case, wrenched from its context to support respondent's theory, was never intended to put without the pale of the statute of frauds one who, though the "party to be

charged," does not happen to be the owner. The language of the code is that the agreement is invalid unless it, or some note or memorandum thereof, be in writing, "and subscribed by the party to be charged, or by his agent." [3] As said in *Aldis* v. *Schleicher,* 9 Cal. App. 373, [99 Pac. 526], the section is "equally applicable to any contract whereby one, whether owner or not, employs another to effect a sale of real estate and agrees unconditionally to pay a stipulated sum for the performance of such services." This emphatic and terse statement of the law has never been questioned in any of the many later decisions dealing with this code provision, and to it we give our unqualified approval.

[4] Equally without merit is the contention that because appellant owns almost three-eighths of all the stock issued by the Boss Gold Mining Company he necessarily was benefited by the sale, and therefore respondent is entitled to her judgment for five thousand dollars. In the brief filed in her behalf, respondent says that the instruction given in *Jenkins* v. *Locke-Paddon Co.,* 30 Cal. App. 56, [157 Pac. 538], "clearly enunciates plaintiff's theory." The instruction given in that case, and to which respondent refers when she says it clearly enunciates her theory, was as follows: "You are further instructed that while a parol agreement by the owner of real property to pay an agent a commission for the sale of real property is not valid because it rests in parol, nevertheless, an agreement by one person to share his advantage on a sale of real estate with another person, though not in writing, is valid, and if you find that some advantage was to be derived to this defendant from the exchange, *and that the defendant was to share its advantage with plaintiff,* and that plaintiff consummated the exchange, and that defendant actually received some advantage from the exchange, the verdict should be for the plaintiff." (The italics are ours.)

There are at least two reasons why the doctrine enunciated in this instruction does not aid respondent here: (1) There is no evidence that a consummation of the sale of the property of the Boss Gold Mining Company, as contemplated by the agreement between it and the persons whom respondent produced as purchasers, would have benefited appellant in any wise or to any extent, even though

48 Cal. App.—15

he did own a large block of the stock of that corporation. Respondent assumes that because fifty thousand dollars was paid to the corporation on the sale of its property, appellant, merely because he was a stockholder, necessarily was enriched by the payment in an amount equal to seventeen thousand dollars. It is true that the purchasers, after making the first payment, refused to go on with the sale, and that, under the terms of their contract with the mining company, they forfeited all of this first payment of fifty thousand dollars. But respondent's rights are to be determined from the facts existing at the time when the oral agreement of employment was made, or at any rate from the facts existing at a time not later than the payment of the fifty thousand dollars, at which time, if ever, she became entitled to the commission of five thousand dollars. Her claim here is that there was an executed contract of sale for one hundred and fifty thousand dollars, binding upon both vendor and vendees. Had the contract of sale been fully performed, as contemplated when it was executed, the purchasers would have received the mining properties and the corporation the one hundred and fifty thousand dollars. But there is no evidence that the properties that the mining company contracted to sell were not worth all of the selling price—one hundred and fifty thousand dollars. Had the properties been worth that sum or more, as is quite possible, and had the sale gone through, appellant would not have been enriched merely because the corporation in which he happened to hold stock had one hundred and fifty thousand dollars in its treasury in lieu of valuable mining properties the title to which it had conveyed. **[5]** (2) In the second place, and this is a decisive answer to respondent's contention, the contract of employment, as testified to by respondent and her witnesses, was an agreement to pay, as compensation or commission, a definite sum of money, namely, fifteen thousand dollars, or ten per cent of the selling price. It was not an agreement to share any advantage that, as a result of an advantageous sale, might indirectly accrue to appellant as a stockholder in the vendor corporation.

In *Sellers* v. *Solway Land Co.*, 31 Cal. App. 259, [160 Pac. 175], the court enumerates three classes of contracts wherein one who employs or receives the co-operation of another to sell real estate is liable though the contract be

oral. The first class comprises cases where the agreement is purely and simply one of partnership; the second comprises cases where the agreement is to divide between the parties thereto, either equally or in a stated proportion, the commission or compensation to be received by one of them from the owner of the land to be sold; and the third class consists of cases in which one of the parties to the oral agreement, *having a valid contract with the owner to sell the property,* has agreed with the other party to pay him for his services either in procuring a buyer or in assisting toward that end. The instant case does not fall within any of these three classes. There was no partnership between plaintiff and defendant; there was no agreement between them to divide any commission or compensation to be received by defendant from the owner, or to divide or share any advantage of any kind that might accrue to defendant as a result of the sale; and defendant had no valid and enforceable contract with the owner.

Our conclusion is that respondent's oral agreement to find a purchaser is not within any of the recognized exceptions to the rule that "an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission" is "invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent."

Judgment reversed.

Thomas, J., and Weller, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 16, 1920.

All the Justices concurred, except Sloane, J., who was absent.