[Nos. 12958, 13333.    In Bank. — July 24, 1891.]

C. L. GORHAM ET AL., APPELLANTS, v. JOSEPH HEIMAN ET AL., RESPONDENTS.    HENRY SNELL ET AL., INTERVENERS AND RESPONDENTS.    C. L. GORHAM ET AL., RESPONDENTS, v. JOSEPH HEIMAN ET AL., APPELLANTS, AND JOHN RATHGEB ET AL., RESPONDENTS.    HENRY SNELL ET AL., INTERVENERS AND RESPONDENTS.

REAL ESTATE BROKERS — ORAL AGREEMENT TO SHARE COMMISSIONS — STATUTE OF FRAUDS. — A contract between brokers to co-operate in buying and selling real estate for a share of the commissions is not within the statute of frauds, and need not be in writing.

ID. — ACTION FOR SHARE OF COMMISSIONS — SUFFICIENCY OF COMPLAINT — IMMATERIAL ALLEGATION — PARTNERSHIP — FINDINGS. — A complaint in an action by real estate brokers to recover a share of the commissions paid to other brokers for the sale of mining property which alleges an oral agreement of partnership between the plaintiffs and the defendants to deal in mining properties, and also an oral agreement between the plaintiffs and the defendants to co-operate in obtaining authority to sell and in selling a particular mine, that the agreement was acted upon, and that the plaintiffs performed their part of the contract; but the defendants, after collecting the commissions, refused to divide them, states a cause of action against the defendants, irrespective of the alleged contract of partnership, which is wholly immaterial, and need not be passed upon in the findings.

ID. — FINDINGS — CONTRACT — AGENCY — TRUST — COLLUSION WITH MINE-OWNERS — IMMATERIAL OMISSION. — The court having found that it was understood and intended by the owners of the mine that the plaintiffs were to have a share in the business of selling the mine and an equal

share of the commissions, that the direction of the owners of the mine to pay the commissions to one of the defendants was for the benefit of all the parties, and that such defendant was thereby constituted the agent and trustee of the plaintiffs in the collection of their share of the commissions, an allegation in the complaint that the mine-owners colluded with the defendants to defraud the plaintiffs is immaterial, and the failure of the court to find the allegation to be true does not affect the right of the plaintiffs to recover.

ID.— INTERVENTION — PLEADING — PERFORMANCE OF CONTRACT — EXCUSE.— A complaint in intervention in such action, on the part of another firm of real estate brokers, alleging an agreement between them and the defendants to place the same mine in the hands of the defendants for sale upon specified terms as to division of profits, is faulty, if it does not allege compliance with the stipulation on the part of the interveners, or anything equivalent to it, or any excuse for non-compliance therewith.

ID. — RECOVERY OF COMMISSIONS — JUDGMENT FOR COMMISSIONS NOT DUE.— Where the purchase price of the mine was to be paid in installments, and the brokers making the sale were only to receive for commissions ten per cent of the amount actually paid into bank by the purchasers, and it appears that only part of the purchase-money was paid before the rendition of judgment, a judgment against the brokers who made the sale, in favor of other brokers, who claimed an interest in the commissions, for the entire amount of commissions which would. be due when the entire purchase price should be paid, is erroneous.

ID. — CONFLICTING AGREEMENTS TO SHARE COMMISSIONS —'RIGHTS OF CONTRACTING PARTIES. — Where the mine-owners agreed with the plaintiffs and defendants to pay them a commission, for the sale of the mine, of ten per cent of the amount paid on account of purchase-money, to be shared equally by them, and afterwards the defendants made a secret agreement with other brokers, by which defendants were to have what they could get for the mine over and above the amount asked by the owners of the mine, and such other brokers were to receive the whole of the ten per cent commission, the plaintiffs are entitled to one half of the commissions on the purchase-money paid, of which they could not be deprived by such secret agreement, which could only create a liability against the defendants, and could only bind their interest in the commissions earned.

SEPARATE APPEALS from part of a judgment of the Superior Court of the city and county of San Francisco, and from the whole judgment.

The facts are stated in the opinion of the court.

*Cyril V. Grey, W. S. Goodfellow,* and *L. F. Dunand,* for Appellants in No. 13333.

The alleged partnership of the plaintiffs was to buy

and sell real estate; and no agreement to sell real estate, or any interest therein, or to employ an agent to buy or sell, is valid, unless in writing subscribed by the party. (Story on Partnership, sec. 83; Civ. Code, sec. 1624, subds. 5, 6; secs. 1741, 2309; *Gray* v. *Palmer*, 9 Cal. 616–639; *Raub* v. *Smith*, 61 Mich. 543; *Levy* v. *Brush*, 45 N. Y. 589; *Larkins* v. *Rhodes*, 5 Port. 195, 200, 201; *Duren* v. *Parsons*, 5 Port. 345.) The complaint shows that there was no partnership between the plaintiffs, but that it was, at the most, only an agreement to become partners, and that no joint transaction was ever undertaken by the parties. (See Parsons on Partnership, 3d ed., 6; Lindley on Partnership, 27–31; *Powell* v. *Maguire*, 43 Cal. 11, 19; *Fuller* v. *Reed*, 38 Cal. 99.) There is no finding of a partnership. If such had been found, an accounting must necessarily follow, and only the profits, after paying charges and expenses, would be divided; and there is no accounting ordered. (*Fisher* v. *Swett*, 67 Cal. 228.) There can be no partnership without a division of losses as well as of profits. (*Wheeler* v. *Farmer*, 38 Cal. 213; *Smith* v. *Moynihan*, 44 Cal. 61; *Fisher* v. *Sweet*, 67 Cal. 228.) The complaint does not show a partnership between the plaintiffs and defendants Heiman and Hamilton; but even if it did, the complaint shows no cause of action, as one partner cannot bring a suit to have the partnership accounts stated at intervals, and accruing profits divided. (*Russell* v. *Byron*, 2 Cal. 86; *Stone* v. *Fouse*, 3 Cal. 292; *Mason* v. *Tipton*, 4 Cal. 276; *Nugent* v. *Locke*, 4 Cal. 318; *Wilson* v. *Lassen*, 5 Cal. 114; *Barnstead* v. *Empire M. Co.*, 5 Cal. 299; *Fisher* v. *Sweet*, 67 Cal. 228.)

*Royce & Cummins*, for Appellants in No. 12958.

*George Cabaniss, Winans & Belknap*, and *Royce & Cummins*, for Respondents in No. 13333.

*Cyril V. Grey, L. F. Dunand, George Cabaniss*, and *Winans & Belknap*, for Respondents in No. 12958.

*Bishop & Watt, I. N. Thorne,* and *John H. Durst,* for Interveners and Respondents in Nos. 13333 and 12958.

The statute of frauds cannot be invoked in this case. (*Coward* v. *Clanton,* 79 Cal. 26.) If it was necessary to find upon the allegation of partnership between the plaintiffs and defendants, the court has found an agreement between them which in judgment of law constitutes a partnership. A partnership may be for one transaction only. (1 Lindley on Partnership, Ewell's ed., pt. 2, pp. *49, 118.) A partnership may involve a division of profits only, and not of losses. (1 Lindley on Partnership, Ewell's ed., pt. 2, pp. *13 et seq., 46.) By virtue of the agreement between the defendants and interveners, the commissions in the bank belonged, in equity, to the interveners. (*Hoffman* v. *Vallejo,* 45 Cal. 564; Pomeroy's Eq. Jur., secs. 1280, 1296; Story's Eq. Jur., secs. 1040, 1055; *County of Des Moines* v. *Hinkler,* 62 Iowa, 644.) In equity, no particular form is necessary. Any writing, or even an act, which plainly enables an appropriation of the fund or property will be esteemed an assignment. (*Bower* v. *Hadden Blue Stone Co.,* 30 N. J. Eq. 172; *Ruple* v. *Bindley,* 91 Pa. St. 299; *County of Des Moines* v. *Hinkler,* 62 Iowa, 637, 645; *Shannon* v. *Mayor,* 37 N. J. Eq. 125; *Tingle* v. *Fisher,* 20 W. Va. 505.) An agreement making such appropriation is thus effectual. (*Field* v. *Mayor of New York,* 6 N. Y. 179; 57 Am. Dec. 435; *Bibend* v. *Liverpool etc. Ins. Co.,* 30 Cal. 86; *Pierce* v. *Robinson,* 13 Cal. 116, 119, 123; *Patten* v. *Wilson,* 34 Pa. St. 299; *Gallinger* v. *Pomeroy,* 3 G. Greene, 179; 54 Am. Dec. 496; *Cromwell* v. *Brooklyn Fire Ins. Co.,* 39 Barb. 227; *East Lewisburg L. & M. Co.* v. *Marsh,* 91 Pa. St. 96; *Williams* v. *Ingersoll,* 89 N. Y. 515; *Ruple* v. *Bindley,* 91 Pa. St. 299; *Chase* v. *Petroleum Bank,* 66 Pa. St. 169; *Wyle* v. *Coxe,* 15 How. 416, 420; *Dale* v. *Land Co.,* 3 Phila. 328.) The fund need not be in existence. When it does come into existence, the agreement will create an interest which a court of equity will enforce. (Pomeroy's Eq. Jur., sec.

1283; Story's Eq. Jur., secs. 1040, 1047, 1055; *Field* v. *Mayor of New York*, 6 N. Y. 179; 57 Am. Dec. 435; *Williams* v. *Ingersoll*, 89 N. Y. 109; *Cromwell* v. *Brooklyn F. Ins. Co.*, 39 Barb. 227; *Johnson Co.* v. *Bryson*, 27 Mo. App. 349; *Bibend* v. *Liverpool etc. Ins. Co.*, 30 Cal. 78, 86; *Pierce* v. *Robinson*, 13 Cal. 116, 121, 123; Story's Eq. Jur., sec. 1040; *Mitchell* v. *Winslow*, 2 Story, 630; *Douglas* v. *Russell*, 4 Sim. 533.) Such agreement or assignment is in the nature of a declaration of trust. A trust attaches to the property. (Story Eq. Jur., sec. 1040; and see *Pierce* v. *Robinson*, 13 Cal. 121.)

BEATTY, C. J. — This is a suit in equity arising out of a controversy between several opposing claimants to a sum of money in the hands of the London and San Francisco Bank. There are two appeals in the case, the first, No. 12958, being an appeal by plaintiffs from a part of the judgment in favor of the interveners, and the second, No. 13333, being an appeal by the defendants Heiman and Hamilton from the whole judgment, which was in favor of the plaintiffs and the interveners. The two appeals have been argued and submitted, and may be conveniently considered together.

The controversy arose upon the following state of facts: In January, 1886, and prior thereto, John Rathgeb and brother were owners of a valuable mine in Calaveras County, known as the Cordova mine, which they were willing to sell for one hundred and fifty thousand dollars, less ten per cent commission to any broker who might effect a sale for them at that figure. The plaintiffs Gorham and Rank, were partners in the business of selling mines and other real estate on commission, and had been in communication with the Rathgebs, endeavoring to secure written authority to make sale of their mine. The interveners, Snell and others, partners in the same business, had likewise been endeavoring to secure such authority from the Rathgebs, but neither had

succeeded. The matter being in this situation, plaintiffs and interveners, each without the knowledge of the other, brought the Cordova mine to the attention of the defendants Heiman and Hamilton, who also were engaged as partners in selling mines on commission, and who, by reason of certain business connections, had unusual facilities for disposing of such properties in the London market. The result was, that defendants Heiman and Hamilton, without the knowledge of the interveners, entered into an oral agreement with the plaintiffs, to the effect that they would unite with them in obtaining written authority from the Rathgebs to make the sale; that they would co-operate in effecting it, and divide the commissions equally. At the same time, without the knowledge of the plaintiffs, the defendants entered into another oral agreement with the interveners, that they would unite with them in obtaining written authority from the Rathgebs, and in making the sale, the interveners to take the whole of the ten per cent commissions, and the defendants to have what they could get over and above one hundred and fifty thousand dollars, the price asked for the mine by the owner. In pursuance of these agreements, the interveners furnished the defendants with the written report of an expert, and other valuable information they had concerning the mine, and gave the defendant Hamilton a letter of introduction to the owners, upon the understanding that he should visit them at the mine, for the purpose of procuring their written authority to sell. Shortly thereafter, Hamilton did visit the mine, but he went in company with the plaintiff Rank, by whom he was introduced to the owners, and assisted in making measurements of the workings, taking photographs, etc. He did not inform the Rathgebs of his connection with the interveners, nor, it would seem, did he make any use of their letter of introduction. The result of his and Rank's visit to the mine was, that the owners concluded to confide the business of making the sale to

the plaintiffs and defendants Heiman and Hamilton, and
to give them exclusive control of the property for a lim-
ited time.    It seems to have been understood that Ham-
ilton was to proceed to London, for the purpose of effecting
the sale there; and for the purpose of facilitating his op-
erations, and at the same time protecting the owners, it
was decided to put the transaction in the form of a grant
of the mine to Hamilton, the deed to be deposited in
escrow with a San Francisco bank, under instructions
to deliver it to him upon payment of thirty thousand
pounds, less ten per cent.    A written memorandum to
this effect was made at the mine in January, 1886, and
afterwards, in March, 1886, a deed granting the mine to
Hamilton was deposited with instructions for its deliv-
ery in a bank at San Francisco.    Meantime, Hamilton
had proceeded to London, where he effected a sale of the
property for forty thousand pounds, to be paid in install-
ments extending over a period of eighteen months.    For
the purpose, apparently, of conforming to the terms of
this sale, the Rathgebs executed another conveyance of
the mine directly to the English purchaser, and deposited
it with the London and San Francisco Bank, under
written instructions for its delivery to the grantee upon
the payment of thirty thousand pounds in certain in-
stallments, ten per cent of each installment, as paid, to
be placed to the credit of the defendant Heiman.    But
although this was the form by which written authority
to make the sale was given, it was understood and in-
tended by the Rathgebs, and by Hamilton and Rank —
the four parties who participated in the negotiations
preceding the agreement — that the direction to the
bank to pay the ten per cent of the thirty thousand
pounds to Heiman was for the equal benefit of the plain-
tiffs and defendants; that is to say, Gorham and Rank, as
copartners, were to have one half and Heiman and Ham-
ilton the other half of said commissions.    The defendants
Heiman and Hamilton, however, seem to have deter-

mined at this stage of the proceeding to repudiate the claim
of the plaintiffs to any share in the commissions, as well
as their agreement with the interveners that they should
have the whole thereof; for they concealed the fact that
a sale had been made, and even after Heiman had drawn
and appropriated ten per cent of the first five thousand
pounds, he responded to the inquiries of plaintiffs and
interveners by a denial of the sale. Before the second
installment of five thousand pounds was paid, the plain-
tiffs, having discovered the truth, commenced this action,
making Heiman and Hamilton and the Rathgebs de-
fendants. Afterwards, by order of the court, the bank
was made a defendant, but having no interest in the
controversy beyond that of a mere stake-holder, its plead-
ings need not be considered. The Rathgebs, also, are
practically out of the case. The plaintiffs allege against
them certain acts of collusion with Heiman and Hamil-
ton, which they deny, and their denial is sustained by
the findings of the court. For the rest, it is sufficient to
say that in their answers to the complaints of plaintiffs
and of the interveners, the Rathgebs sustain the allega-
tions of the plaintiffs, and deny those of the interveners,
so far as they are brought in relation to the controversy.
It will be understood, therefore, that in speaking of the
defendants hereafter in this opinion, Heiman and Ham-
ilton alone are intended.

The plaintiffs in their amended complaint allege that
on or about the 18th of January, 1886, they and the de-
fendants associated themselves together as copartners,
under an oral agreement to deal in mining properties,
and divide the profits equally; that in pursuance of
said agreement they informed defendants about the Cor-
dova mine, and that the owners had orally agreed to give
them, and such others as they chose to associate with
them, a written contract to pay a commission, provided
they procured a purchaser for said mine at one hundred
and fifty thousand dollars or more; that it was then

and there agreed that Hamilton and Rank should examine the mine, and if Hamilton was satisfied therewith, and satisfactory terms could be made with the owners, Heiman should advance the money to defray Hamilton's expenses in going to London and making the sale; that Rank and Hamilton went to Calaveras County, examined, mapped, and photographed the mine; that the owners then and there orally agreed to pay them and their associates ten per cent commissions, provided they made a sale in three months at one hundred and fifty thousand dollars or over, and that said agreement should be reduced to writing in San Francisco, and executed in the presence of Gorham and Heiman; that, afterwards, John Rathgeb came to San Francisco, and, conniving with defendants to deceive and defraud plaintiffs, executed writings empowering defendants to sell the mine and receive the proceeds; that Hamilton sold the mine to an English corporation for forty thousand pounds, to be paid as follows: —

£5,000 . . . . . . . . August 31, 1886;
£5,000 . . . . . . . . 5 months thereafter;
£5,000 . . . . . . . . 6 months thereafter;
£5,000 . . . . . . . . 9 months thereafter;
£5,000 . . . . . . . . 12 months thereafter;
£5,000 . . . . . . . . 15 months thereafter; and
£10,000 . . . . . . . . 18 months thereafter;

Each of the deferred payments to bear interest at the rate of seven per cent per annum; that on August 31st the Rathgebs executed deeds of the mine and deposited them in the London and San Francisco Bank, with instructions to deliver them to the purchaser upon payment of the purchase price; and for the purpose of defrauding plaintiffs out of their share of the commissions, instructed the bank to pay the commissions to Heiman; that the first payment was made August 31, 1886, and ten per cent thereof, amounting to $2,418.12, paid to and appropriated by Heiman, to the exclusion of plaintiffs.

Upon these allegations, in substance, the plaintiffs prayed, — 1. That the defendants be required to bring in the papers deposited in the bank, to the end that they might be properly reformed so as to preserve the rights of the plaintiffs; 2. That Heiman and Hamilton be required to account for and pay to them one half of the commissions received; 3. That the bank be made a party; 5. For an injunction against payment by the bank to Heiman and Hamilton *pendente lite;* 6. For costs and general relief.

To this complaint Heiman and Hamilton each interposed a general demurrer for want of facts, which being overruled, they answered separately, denying all the material allegations of the complaint, except the sale of the mine and its terms, and alleging an exclusive contract between themselves and the Rathgebs for its sale and the payment of the commissions.

Afterwards, a supplemental complaint was filed, alleging the payment to the bank of two additional installments of the purchase price of the mine, and the receipt and appropriation by Heiman of ten per cent of the second installment, all of which was admitted by the several defendants to be true.

Afterwards, the interveners were permitted to file their complaint in intervention, wherein they alleged that in November, 1885, they associated themselves as copartners, under an oral agreement to deal in mining properties, and divide the profits; that thereafter they were engaged in negotiating a sale of the Rathgebs's mines, and while so engaged were informed by Heiman and Hamilton of the facilities they claimed to have for selling mines in London; that they thereupon informed defendants of their attempts to sell the Rathgebs's mine, and that they were to receive ten per cent of the selling price, which must not be less than one hundred and fifty thousand dollars; that defendants offered to aid them in negotiating a sale, and they " then and there agreed

that said Snell and his associates would place said property in the hands of said Hamilton and Heiman for sale," defendants to receive for their compensation in making the sale the excess which might be obtained over one hundred and fifty thousand dollars, and the interveners to receive the ten per cent; that in pursuance of this agreement, the interveners delivered to the defendants a written report and diagram of the property, supplied other information, and thereafter continued to render all possible aid to defendants in making a sale; that afterwards a sale was made, as alleged in the complaint; that John Rathgeb was well informed of all the facts, and well understood that interveners were to. receive the commissions on the sale; that after the sale, said Hamilton induced John Rathgeb to order the commissions to be paid to him; that they refuse to pay any part thereof to the interveners, though demanded, etc.

Wherefore interveners pray,—1. That the bank be directed to pay them such sums as may be found to be due, etc.; 2. That Hamilton and Heiman be ordered to pay them the sums they have received; and 3. For general relief.

To this complaint in intervention the plaintiffs and the Rathgebs interposed demurrers, which were overruled, whereupon they answered, denying all the material allegations contained therein. The defendants · Heiman and Hamilton answered by similar denials, without having demurred.

Upon these pleadings the cause was tried by the superior court without a jury, and the facts found substantially as set out in the beginning of this opinion, from which it was concluded as follows:—

"As against the defendants, the plaintiffs are entitled to one half of the sum on deposit in the London and San Francisco Bank, Limited, as the commissions; as against the defendants, the interveners are entitled to the whole of said commissions; as between the plaintiffs,

the interveners, and the defendant London and San Francisco Bank, Limited, the plaintiffs are entitled to one third and the interveners to two thirds of the sum on deposit in said bank; defendants Hamilton and Heiman to pay the costs."

The following judgment, omitting formal recitals, was at the same date signed and filed by the judge, together with the findings, and was afterwards duly entered:—

"Now, therefore, in accordance with law and decisions and findings aforesaid, it is ordered, adjudged, and decreed that the plaintiffs C. L. Gorham and J. B. Rank do have and recover of and from the defendants C. A. Hamilton and Joseph Heiman the sum of $7,275, with interest at seven per cent per annum from the thirty-first day of August, A. D. 1886, and for their costs, taxed at the sum of ——. And it is further ordered, adjudged, and decreed that the interveners, Henry Snell, W. E. Griswold, James McMehan, and S. W. Howland, do have and recover of and from the defendants C. A. Hamilton and Joseph Heiman, the sum of fourteen thousand five hundred and fifty dollars ($14,550), with interest thereon from the thirty-first day of August, A. D. 1886, and their costs of this action, taxed at the sum of ——. And it is further ordered, adjudged, and decreed that the defendant London and San Francisco Bank, Limited, do pay over and deliver to the plaintiffs and interveners above named all funds received and held by it as commissions on the sale of the so-called Rathgeb or Cordova mine, or held by it to the credit or order of the defendants C. A. Hamilton and Joseph Heiman, or either of them, and all moneys received by it from the Union Gold Company, Limited, or from John Rathgeb, Sen., and Hans Rathgeb, or either of them, to the credit of said defendants C. A. Hamilton and Joseph Heiman, or either of them, to the extent of the judgments in favor of the plaintiffs and interveners herein ordered, in the proportions following, viz., one third of such funds to the plaintiffs, and two

thirds thereof to the interveners. Done in open court this twenty-fifth day of May, A. D. 1888."

We will first consider the appeal of the defendants from this judgment.

1. They contend that the superior court erred in overruling their demurrers to the complaint of the plaintiffs, because the oral agreement to form a copartnership to deal in mining properties therein alleged was void. But, reading the whole complaint together, it is apparent that the contract alleged was merely to buy and sell as brokers, and there is no statute of frauds requiring such contracts to be in writing. Besides, there is enough in the complaint to show a cause of action against the appellants, independent of the contract of partnership. It shows an agreement to co-operate in obtaining authority to sell, and in selling, a mine for an equal share of the commissions. It shows that the agreement was acted upon. It shows performance on the part of plaintiffs, collection of the commissions by appellants, and refusal to divide. Certainly this establishes a cause of action if the agreement was valid, and we know of no ground upon which it can be held invalid. Counsel seem to rely on section 1624 of the Civil Code, subdivision 6. But, clearly, that provision was only designed to protect owners of real estate against unfounded claims of brokers. It does not extend to agreements between brokers to co-operate in making sales for a share of the commissions. It may be, as counsel argue, that the allowance of such claims as plaintiffs and interveners make in this action, unsupported, as they are, by any written evidence of the contract, opens the door to frauds of as gross a nature as were ever perpetrated by real estate brokers under pretense of oral employment by the owners to make sales; but if so, the evil is one which the legislature alone can remedy. It might be as plausibly argued that contracts should generally be

held void if not in writing; but the law is otherwise. (Civ. Code, sec. 1622.)

The court did not err in overruling the demurrers.

2. The objections to the sufficiency of the complaint in intervention urged in the argument are better founded, and will be referred to hereafter; but for the present it is sufficient to say that defendants did not demur to the complaint in intervention.

3. It is no objection to the sufficiency of the findings that they do not respond to the allegation of a partnership between plaintiffs and defendants. As we have seen, that allegation is wholly immaterial.

We think the findings do clearly and sufficiently show that it was understood and intended by the Rathgebs that plaintiffs were to have a share in the business of selling the mine and an equal share of the commissions; that the direction to pay the commissions to Heiman was for the benefit of all these parties; and that Heiman was thereby constituted the agent and trustee of plaintiffs in the collection of their share of the commissions.

4. Such being the case, the allegation that the Rathgebs colluded with defendants to defraud the plaintiffs becomes immaterial, and the failure to find this allegation true does not affect their right to recover.

5. The findings in favor of the interveners are certainly rather meager, but they come fully up to the allegations of their complaint, so that the particular objection made to them goes rather to the complaint than to the findings themselves. In setting out their agreement with defendants, interveners allege that they agreed " to place said property in the hands of Heiman and Hamilton for sale," but they nowhere allege compliance with this stipulation, or anything equivalent to it, or excuse for non-compliance. Their complaint was, in this respect, extremely faulty, but the court, in the absence of a demurrer, seems to have treated the allegation quoted as the equivalent of an allegation that interven-

ers agreed to furnish Heiman and Hamilton with such information as they possessed concerning the mine, introduce them to the owners, and, when the mine should be placed in their hands, to assist in making a sale. This, in substance, is all they are found to have done, and this, no doubt, if such was the agreement, was a sufficient consideration for an agreement by defendants to allow them all the commissions on the price demanded by the owners. But the allegations of the complaint in intervention as to these matters are too loose and vague to deserve commendation, and the findings are necessarily like the pleadings. It is not necessary, however, to decide whether these deficiencies would necessitate a reversal of the judgment, since there is another ground upon which we are convinced it must be reversed; and when the cause is remanded, the interveners will have an opportunity of amending their complaint so as to show precisely what they stipulated to do, and their compliance with their stipulations, or their excuse for any failure to comply.

6. The defendants make the point that the findings do not support the judgment, and in this respect we think their contention must be sustained.

There is nothing in the pleadings or the findings to show that anything more than the first three installments of the price of the mine, amounting to fifteen thousand pounds, has been paid by the English purchaser, and it clearly appears that under the contract with the Rathgebs, Heiman and Hamilton were only to receive for commissions ten per cent of the amount actually paid into the bank. But the judgment against them in favor of the interveners is for ten per cent of thirty thousand pounds, and in favor of plaintiffs for half that sum; in other words, there are judgments against them for commissions which, so far as the record shows, they have never received, and may never become entitled to. For this error, the judgment must be re-

versed, and the cause remanded for further proceedings.

For the purpose of such further proceedings, it is necessary that the superior court should be advised of our views respecting the controversy between plaintiffs and interveners as to the proportion of the fund in the hands of the bank to which they are respectively entitled.

The plaintiffs contend, in support of their appeal, that the superior court erred in directing payment to them of only one third of said fund, and we think they are right in this contention. It may be that defendants have become personally liable to the interveners for an amount equal to the whole of the ten-per-cent commissions on thirty thousand pounds, and that, as against the defendants, the interveners would be entitled to the entire fund. But if one half of the fund has always belonged to the plaintiffs, it cannot be taken away from them and given to a party to whom the defendants, without right or authority, agreed to give it. According to the findings, the defendants, before obtaining any authority from the mine-owners, agreed to give the interveners the entire amount of the commissions. This, as we say, may have resulted in a personal liability to that amount, but the right of the interveners to share in the specific fund is dependent upon the right of the defendants, and can by no possibility exceed it. Now, this fund was created by the act of the mine-owners, and belongs to those for whose benefit they designed it. They had a right to select their agents for the sale of the mine, and they selected, not the defendants only, but the plaintiffs and the defendants, and they agreed with the plaintiffs that they should have one half of the commissions. By virtue of this agreement, one half of the commissions became the property of the plaintiffs, and the defendants had no power to dispose of it. The mere fact that Heiman was empowered to draw the whole of the commis-

sions conferred upon defendants no property in the share of the plaintiffs. It simply constituted Heiman their trustee to receive and pay over the money to them. For these reasons, the part of the decree appealed from by the plaintiffs must be reversed.

It remains to be decided what further proceedings in the superior court are necessary for determining and enforcing the rights of the parties.

As to the plaintiffs, there seems to be no necessity for a new trial of the issues upon which their right to recover from defendants one half of the commissions depends, but for the purpose of determining the amount to which they are entitled, it will be necessary, by supplemental complaint and additional findings, to ascertain the amount paid by the purchaser of the mine, for upon that depends the amount of commissions earned.

As to the interveners, they should be allowed to amend their complaint, and as between them and plaintiffs and defendants, there should be a new trial. If they again recover, the fund in the hands of the bank should be equally divided and applied in satisfaction of the respective judgments in favor of plaintiffs and interveners. If the interveners fail to recover, the fund in the bank should be applied, as far as necessary, in satisfaction of the judgment in favor of the plaintiffs.

The judgment is reversed, and the cause remanded, with directions to the sup rior court to proceed in accordance with the views herein expressed.

PATERSON, J., DE HAVEN, J., GAROUTTE, J., and SHARPSTEIN, J., concurred.

HARRISON, J., deeming himself disqualified, did not participate in the above decision.

Rehearing denied.