[Civ. No. 15122.   First Dist., Div. Two.   Dec. 19, 1952.]

R. PARDOW HOOPER, Appellant, v. JULIET BORDEN
MAYFIELD et al., Respondents.

Cushing, Cullinan, Duniway & Gorrill for Appellant.

Graham & Morse, Mark A. Hall, Heller, Ehrman, White & McAuliffe, C. Ray Robinson and William B. Boone for Respondents.

NOURSE, P. J.—This is an action by a broker to recover a commission on a sale of real estate. A general demurrer to his complaint was sustained without leave to amend and he appeals from the judgment entered accordingly. It is conceded that no further cause of action can be stated by amendment. The complaint contains in evidentiary detail all the facts on which plaintiff bases his right to commission, the correspondence between the parties being set out *in haec verba*. The substance of appellant's allegations is as follows:

Plaintiff is a licensed real estate broker doing business as such. In August of 1949 he completed an appraisal of

"Victoria Island," the realty here involved, which was part of an estate in probate and of which the defendants were the owners in different fractional interests. Expecting that said owners would offer Victoria Island for sale, plaintiff in that month suggested to one J. L. Rudé, an investor, its possible purchase, showed it to him and gave him complete information about it. In September, 1949, said Rudé proposed to plaintiff to "flush out" the owners by an offer of one million dollars cash if plaintiff would cut in Rudé on the commission, but for the time being the matter rested when plaintiff explained that he was not allowed to share commissions with an unlicensed person. On February 2, 1950, plaintiff received a letter signed by F. M. McAuliffe, an attorney at law, stating that he represented certain of the legatees interested in selling the property, that he was advised that plaintiff was one of several who had made inquiries as to whether the property was for sale, and that if a fair offer was made he would try to induce the owners to consent to a sale. Data as to the property were enclosed. Plaintiff immediately informed Rudé of said letter and told him that he was informed the owners were trying to obtain a price of $1,500,000, and what terms of payment they would expect. By letter of February 3, 1950, he informed Mr. McAuliffe that he had advised several clients of the opportunity to make offers and gave the names of three clients, among them Rudé, who had approached plaintiff on the matter and with whom he was now attempting to negotiate. By letter of February 8, 1950, Rudé informed plaintiff that to his people Victoria Island did not seem attractive at present price and terms, but he asked plaintiff to keep in touch with him. On June 22, 1950, plaintiff received another letter from Mr. McAuliffe reading:

"Enclosed find notice of sale of Victoria Island, which we are forwarding to you as our records show that you have indicated an interest in the purchase of this property." Attached to said letter was a "Notice of Sale of Victoria Island at Private Sale." It offered the property for sale to the highest bidder, sealed bids of not less than $1,250,000 to be accepted up to 2:00 p. m. on July 17, 1950, and contained full terms of sale of which the following must be noted: "Bidder shall state in dollars the amount of real estate commission, if any, that is to be deducted from the purchase price. The rate of such commission shall not be in excess of that customary in the sale of farm property in San Joaquin

County.'' Plaintiff sent a copy of the notice to Rudé but there is no allegation of any reaction of Rudé. On July 24, 1950, plaintiff received a third letter from Mr. McAuliffe informing him that on July 17th no bids had been received, but that he had been advised by several parties that they would be interested in obtaining an option and that he believed an option would be granted to persons representing responsible purchasers if the price was fixed. Subsequent to July 25, 1950, Rudé, without consulting or informing plaintiff, made an agreement in writing directly with defendants for the purchase of Victoria Island for $1,250,000, which sale was completed. ''Said agreement was made as a result of the services and activities of plaintiff herein, as herein set forth, acting to the knowledge of said defendants as a licensed real estate broker.'' It is concluded that in consequence of said stated facts defendants became obligated to pay to plaintiff $62,500, being the customary commission for a licensed broker on such sale.

Appellant's primary contention is that said complaint states a good cause of action for commission by a middleman employed only to bring buyer and seller together, not taking part in the negotiations, and leaving the parties to make their own contract. It is contended that an agreement employing such middleman is not an agreement authorizing or employing an agent or broker to purchase or sell real estate and therefore is not subject to the requirement of the statute of frauds that it or some note or memorandum thereof be in writing. (Civ. Code, § 1624, subd. 5; Code Civ. Proc., § 1973, subd. 5.) The contention is without merit.

The distinction between an intermediary acting as a middleman and one acting as an agent of either buyer or seller is generally recognized with respect to the question whether the intermediary is in a confidential relation to one of the parties and may not receive compensation from both without their knowledge. (*Clark* v. *Allen,* 125 Cal. 276 [57 P. 985]; *King* v. *Reed,* 24 Cal.App. 229 [141 P. 41]; *Carothers* v. *Caine,* 38 Cal.App. 71 [175 P. 478]; *Williams* v. *Kinsey,* 74 Cal.App.2d 583, 596 [169 P.2d 487].) Some cases deal with the question whether under special statutes a broker's license is required for someone acting as a middleman (*Shaffer* v. *Beinhorn,* 190 Cal. 569 [213 P. 960]; *Davis* v. *Chipman,* 210 Cal. 609, 620 [293 P. 40]; *Rhode* v. *Bartholomew,* 94 Cal.App. 2d 272, 280 et seq. [210 P.2d 768]). (Appellant takes the position that under the present statute, Bus. & Prof. Code, § 10134,

which includes in the acts of a broker "listing or soliciting prospective purchasers of real estate" a broker's license is required to act as a middleman.) ▮ However appellant does not cite any case, nor have we found any, which holds that a middleman can sue for commission for his services as to the sale of real estate without showing an agreement which satisfies the statute of frauds. To the contrary this proposition has been expressly rejected in *Ryan* v. *Walker*, 35 Cal.App. 116, 119 [169 P. 417]. Other cases are to the same effect. In *Cram* v. *McNeil*, 32 Cal.App. 101 [162 P. 140] it was held that an oral promise to pay commission for information as to the identity and residence of a person, who was not willing to deal through any real estate agent, but to whom defendant would himself sell his property was unenforceable under the statute as the intermediary in such case is an agent or broker within the meaning of the statute. In *Kornman* v. *Nelson*, 83 Cal.App. 616 [257 P. 150], the defendant, the owner of the realty, promised orally to the plaintiff that if she would show the property to prospective purchasers while occupying it as a tenant and would place intended purchasers in touch with him, he would pay her a commission of 5 per cent of the selling price in the event that a sale of the property was made to any such person. It was held that the oral contract was void under the statute. In each of these cases the intermediary was not employed to negotiate or conclude a sale but only to bring the prospective buyer in contact with the seller who would himself make the contract. ▮ The rule is stated as follows in *Duckworth* v. *Schumacher*, 135 Cal.App. 661, 666 [27 P.2d 919], a case which as to its facts is not so directly in point as the preceding cases: "If one assists either in the purchase or sale of real estate on a contract for compensation either by commission or salary, he falls within the inhibitions provided in said section [Civ. Code, § 1624] to the same extent and in the same manner as though he had been the sole and exclusive medium through which the purchase or sale was made. We think that the term 'employed to sell or purchase' should and does include to aid and assist in the purchase or sale . . ." In the same opinion it is said on page 665: "To hold otherwise would give rise to a practice of ingenious forms, without substance in fact, and thus avoid the very salutary rule of law declared in section 1624 of the Civil Code, and open the door to fraud, long closed by said statute, and would in effect abrogate such statute of frauds." We consider this language applicable to the distinction proposed

by appellant and in accordance with our duty to construe the statute so as to effect its object, the protection against unfounded claims (*Egan* v. *Pacific Southwest Trust & Sav. Bank,* 92 Cal.App. 1, 5 [267 P. 719] ; *Toomy* v. *Dunphy,* 86 Cal. 639, 642 [25 P. 130]), we reject the distinction.

■ Moreover the allegations of the complaint do not even show that appellant's function was that of such a middleman, assuming for the moment that an invitation by defendants to some intermediary activity of plaintiff was alleged. Appellant in his briefs bases his right to commission more specifically on the letter of Mr. McAuliffe of June 22, 1950, which he considers a "listing" of the property with appellant. (It is conceded that the letter of February 2d is not sufficient for that purpose and no activity whatever of appellant in response to the letter of July 24th is alleged.) But said letter of June 22d, if it were intended to invite any activity of plaintiff, would require him to persuade his client to accept the owners' offer of a private sale on their stated conditions by bidding within the time limit given not less than the stated minimum price. Thereafter there would be no room for any negotiation or making of contract between the parties themselves. By persuading his client to send in the highest bid appellant would have effected the sale as completely as if he had transmitted to his client a direct offer to sell and had persuaded him to accept it. (Compare *Dolan* v. *O'Toole,* 129 Cal. 488-490 [62 P. 92].)

There is therefore no doubt that the complaint states a cause of action only if the manner in which appellant's services allegedly were engaged satisfies the statute (12 C.J.S. 244). Appellant argues that if he is subject to such requirements they are fulfilled by the alleged letter of June 22d together with the Notice of Sale. The authorities do not support the contention. ■ The chief element required to be shown in writing is the fact of authority or employment to act as intermediary. (*Toomy* v. *Dunphy, supra,* 86 Cal. 639-642; *Moore* v. *Borgfeldt,* 96 Cal.App. 306, 309 [273 P. 1114].) "The rule is settled that in a suit by a broker to recover a real estate commission in order to show compliance with the statute the writing signed by the party to be charged or his agent must unequivocally show on its face the fact of employment of the broker." A writing from the owner to a broker which merely states that the former will sell certain property on certain conditions is insufficient because it does not show employment. (*Blanchard* v. *Pauley,* 92 Cal.App.2d

244, 247 [206 P.2d 864] and earlier cases there cited. See moreover *Herring* v. *Fisher*, 110 Cal.App.2d 322, 326 [242 P.2d 963]; *Egan* v. *Pacific Southwest Trust & Sav. Bank*, *supra*, 92 Cal.App. 1, 3.) ■ A statement that the regular commission will be paid as part of the condition on which the owner is willing to sell does not make the writing sufficient to satisfy the statute (*Morrill* v. *Barneson*, 30 Cal.App.2d 598, 600 [86 P.2d 924]). Although according to Justice Carter, dissenting in *Marks* v. *Walter G. McCarty Corp.*, 33 Cal.2d 814 at page 830 [205 P.2d 1025], these rules may be somewhat modified where the writing is the memorandum of an oral agreement of employment, there is no doubt that they are fully applicable where, as in this case, there has been no personal contact and the writings must constitute the agreement itself.

■ The letter of June 22d together with the Notice of Sale does not show an intention to employ appellant as an intermediary unequivocally or at all. The letter shows that the Notice of Sale was sent to appellant "as our records show that you have indicated an interest in the *purchase* of this property." (Emphasis ours.) As said in *Kleinsorge & Heilbron* v. *Liness*, 17 Cal.App. 534, 539 [120 P. 444], the language does not show that the intervention of a broker or any other third party was necessarily intended, but the offer of a private sale might have been directly submitted by the defendants to an intending purchaser. ■ The commission clause in the Notice of Sale, on which appellant strongly relies, negatives rather than shows the intention of the owners to employ themselves any intermediary. It asks the *bidder* to state the amount of commission, *if any*, to be deducted from the purchase price. The obvious sense of this clause is that, as it is customary that the sellers pay the commission of the intermediary, they will do so but only if the bidder has engaged the services of one. Rudé, the purchaser, did not bid and did not claim commission for appellant and appellant does not even contend that he is entitled to commission because he was engaged as intermediary by Rudé. Under the authorities cited the letter and Notice of Sale are clearly insufficient to satisfy the statute. The other correspondence cannot add anything which results in an unequivocal statement of employment. It shows the same deficiency as the main letter and more so. Appellant's contention that the letter of June 22d constitutes a "listing" of the property with appellant has no separate significance. ■ A listing is at most an offer to use the broker's services

which can be accepted by rendering the services impliedly requested (12 C.J.S. 139). To base an action for commission on it, it must satisfy the statute, as has been shown hereinbefore.

Appellant's contention that respondents were estopped to invoke the statute is wholly without merit. Even where an intermediary has rendered his services in reliance on an express oral employment and the owner has taken advantage of these services the statute prevents recovery of commission and no estoppel is recognized. (*Hicks* v. *Post*, 154 Cal. 22, 28 [96 P. 878] ; *Colburn* v. *Sessin*, 94 Cal.App.2d 4 [209 P.2d 989] and cases there cited.) Here no action whatever of defendants is alleged which can give their recourse to the statute the slightest taint of fraud. Respondents argue that even apart from the statute no employment sufficient for an action for commission has been alleged, citing *Morrill* v. *Barneson, supra,* 30 Cal.App.2d 598, 603. This may well be so, but, as the authorities with regard to the requirements of a showing of employment are much more specific where the statute is applicable than where it is not, we prefer to base our affirmance on the failure to satisfy the statute without deciding the other point.

Judgment affirmed.

Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 16, 1953.