[Civ. No. 35790. Second Dist., Div. Five. Oct. 26, 1970.]

MARGARETHA HOAR, Plaintiff and Respondent, v. DONALD L. TULEY et al., Defendants and Appellants.

## COUNSEL

Madden & Hart and James A. Madden for Defendants and Appellants.

W. W. Eschwig for Plaintiff and Respondent.

## OPINION

STEPHENS, J.—This appeal is from a judgment for plaintiff (Margaretha Hoar) and against defendants (Donald L. Tuley and others) for the amount of a nonnegotiable promissory note dated January 19, 1965. ██ The principal defense is that the promissory note was given for services which required a real estate broker's license and the plaintiff's assignor was not so licensed, and therefore the note was not supported by legal consideration.

The facts are that plaintiff was the divorced wife of one French. French received the note in question as part payment for services rendered in obtaining the termination of an option to purchase certain real property owned by defendants. The option was held by one Shannon, and it gave him the right to purchase some 878 acres in the Paso Robles area for $325 per acre. The termination date of the option was February 15, 1965. French

had been involved in the transaction in which the option had been obtained, and was known to be on good terms with Shannon. The defendants came to the conclusion that the property could be sold at a higher figure and therefore desired that the option not be exercised. To obtain a termination of the option, defendants agreed to return $5,000 which had been paid by Shannon for the option. French was to be paid $5,000 for his services if he could talk Shannon into relinquishment of the option. French performed the services and was paid some cash and the remainder by the January 19, 1965 note in question, payable upon a subsequent sale of the land.[1] The land was ultimately sold to a person other than Shannon. Plaintiff paid French $2,000 for an assignment of the note, and upon its becoming due and payable, sought its satisfaction, only to be met with the stated defense on refusal to satisfy it.[2]

Is the instrument sued upon illegal or void in any way? Was French in violation of any pertinent laws relating to real estate salesmen? The trial court specifically found in the negative as to both of these questions.

The services requested of and rendered by French are succinctly testified to by him. He responded to the question, "Now, what services did you render pursuant to this agreement?" by saying "The services I rendered were exactly—Mr. Tuley said, 'We will pay you $5,000 if you can talk Mr. Shannon into giving up the option.' " "That was the only service that I was required to render." It is conceded that French was not and never had been a real estate broker.[3] He was at all times pertinent here a real estate salesman.[4] The crux of the defense involves portions of Business and

---

[1]"AN AGREEMENT Jan. 19, 1965

"It is hereby agreed between Phillip B. French and Donald Tuley, representing the Coastal Land and Cattle Company . That for services rendered by said Phillip B. French (not a commission for the sale of real estate) the above mentioned Coastal Land and Cattle Company do on this date hand Phillip B. French $2,000.00 as partial payment for the above mentioned services and also do hereby agree to pay Phillip B. French an additional $3,000.00 When either of the portions of property optioned by William Shannon from said company clear escrow." [Punctuation, *sic.*]

[2]The testimony of plaintiff clearly establishes that she was fully aware of the defenses prior to the assignment of the note to her.

[3]Business and Professions Code, section 10131: "A real estate broker within the meaning of this part is a person who, for a compensation or in expectation of a compensation, does or negotiates to do one or more of the following acts for another or others:

"(a) Sells or offers to sell, buys or offers to buy, solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of real property.

" . . . . . . . . . . . . . ."

[4]Business and Professions Code, section 10132: "A real estate salesman within the meaning of this part is a natural person who, for a compensation or in expectation of a compensation, is employed by a licensed real estate broker to do one or more of the acts set forth in Sections 10131, 10131.1 and 10131.2."

Professions Code sections 10130 and 10136, which were in effect at the time:

"Section 10130. It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this State without first obtaining a real estate license from the division."

"Section 10136. No person engaged in the business of acting in the capacity of a real estate broker or a real estate salesman within this State shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose."

The issue raised here was pinpointed by the trial court when it stated: "Now, regardless of what Mr. French said or wrote, or what Mr. Tuley said or wrote, if this is in fact a real estate transaction, then he's [French is] covered obviously by the real estate laws." The judge determined the issue against defendants by his finding that "The court specifically finds that the instrument sued upon is not and was not illegal or void in any way. The court specifically finds that the plaintiff's assignor, Phillip B. French, at no time was in violation of any pertinent law of the State of California relating to real estate salesmen, or in violation of any other law."

It cannot be argued but that if the services rendered were of such a nature as to require the involvement of a licensed real estate broker, no such broker was here in evidence so far as this transaction is concerned.[5] We therefore reach the question of whether the services were of the nature requiring involvement of a licensed broker. We conclude that they were and that the promissory note fails for lack of legal consideration.[6]

The services which were rendered by French classified him as a person who "negotiates the purchase, sale, or exchange of real estate." In the case of *Pac. etc. Dev. Corp.* v. *Western Pac. R.R. Co.,* 47 Cal.2d 62 [301 P.2d 825], the court had occasion to consider the definition of an option in a case involving the statute of frauds. The court there (at p. 68) concluded that "a contract employing a broker to obtain an option for the

---

[5] The testimony of French was sufficient to establish that he was a licensed salesman, but this would not suffice unless he was working under a broker in that instance. (*Gipson* v. *Davis Realty Co.,* 215 Cal.App.2d 190 [30 Cal.Rptr. 253]; *Grand* v. *Griesinger,* 160 Cal.App.2d 397 [325 P.2d 475].)

[6] The complaint also must necessarily be declared insufficient to allege a cause of action on this claim, for it did not (and under the facts, could not) allege the necessary licensing to comply with Business and Professions Code section 10136.

purchase of real property, like a contract employing a broker to purchase or sell real property (*Steiner* v. *Rowley,* 35 Cal.2d 713, 717 [221 P.2d 9]; *Marks* v. *Walter G. McCarty Corp., supra* [33 Cal.2d 814 (205 P.2d 1025)]), comes within the statute and must be in writing." The court there defined the nature of the services which would bring an employment contract within the statute, stating (at pp. 67-68): "[T]he phrase 'to sell or purchase' includes 'to aid or assist in the purchase or sale' of real estate. (*Hooper* v. *Mayfield,* 114 Cal.App.2d 802, 806 [251 P.2d 330]; *Duckworth* v. *Schumacher,* 135 Cal.App. 661, 666 [27 P.2d 919].) Such broad construction of the term conforms with one of the primary purposes of the statute, the protection of real estate owners from the assertion of false claims by brokers and agents. (*Toomy* v. *Dunphy,* 86 Cal. 639, 642 [25 P. 130]; also *Gorham* v. *Heiman,* 90 Cal. 346, 358 [27 P. 289]; *Hooper* v. *Mayfield, supra,* 114 Cal.App.2d 802, 807.) Likewise, the procurement of an option agreement for the purchase of real property is a contract that aids or assists in the purchase or sale of real property and properly comes within the provisions of the statute. . . . To hold otherwise would open the door to the assertion of unfounded claims by brokers and others on the pretense of oral employment in real estate transactions relative to options, and so frustrate the purpose of the statute." ■ Therefore, an agent, who for a fee to be paid by the owner of the property, effectuates the resale of the option by its holder to the owner of the property, is bound by the regulatory provisions of Business and Professions Code section 10131, subdivision (a).[7] ■ "An agreement employing a person to act as a real estate broker who is not licensed as such is illegal, void and unenforceable. [Citations.]" (*Estate of Prieto,* 243 Cal.App.2d 79, 85 [52 Cal.Rptr. 80].) ■ A real estate salesman may perform such services only on behalf of the real estate broker by whom he is then employed, not in his individual capacity, even though he be licensed under a broker.

The judgment is reversed.

Kaus, P. J., and Aiso, J., concurred.

---

[7]For suggested forms of contract to protect brokers as to commission where an option is involved, see California Real Estate Sales Transactions (Cont.Ed.Bar 1967), sections 5.33-5.37, 5.75-5.89, 7.39.